Citation Nr: 1826243 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 12-28 427 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Albuquerque, New Mexico


THE ISSUES

1. Entitlement to service connection for a right knee disability secondary to service-connected left knee disabilities. 

2. Entitlement to a rating in excess of 10 percent for service-connected traumatic arthritis of the left knee. 

3. Entitlement to a rating in excess of 10 percent for service-connected left knee arthritis with limited flexion. 

4. Entitlement to a rating in excess of 10 percent for painful surgical scars of the left lower extremity associated with traumatic arthritis of the left knee. 

5. Entitlement to a compensable rating for surgical scars of the left lower extremity associated with traumatic arthritis of the left knee. 

6. Entitlement to an earlier effective date for the grant of service connection for surgical scars of the left lower extremity. 

REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

C. Biggins, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1977 to October 1983. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from June 2009 (denying an increased evaluation for left knee traumatic arthritis and left knee arthritis with limited flexion) and February 2013 (denying service connection for a right knee disability and granting service connection for left lower extremity painful surgical scars evaluated as 10 percent disabling and surgical scars evaluated as noncompensable) rating decisions of the Albuquerque, New Mexico, Department of Veterans Affairs (VA) Regional Office (RO). 

The Veteran testified before the undersigned Veterans Law Judge at an August 2016 Board videoconference hearing and a transcript of this hearing is of record. 

The Board notes a February 2013 rating decision granted service connection for both painful surgical scars of the left lower extremity and surgical scars of the left lower extremity. The Veteran submitted a March 2013 notice of disagreement for the evaluation for both his painful surgical scars and surgical scars. Therefore, the Board finds the Veteran intended to appeal both evaluations. Thus, the issues are as noted on the cover page. As discussed below, there is some confusion as to what scars were contemplated in each rating decision; that is to be clarified on remand. The Veteran has also disagreed with the effective dates of the grants of service connection; however, given the confusion regarding which scars are contemplated in the particular grants of service connection, the effective date issue will be deferred pending further clarification. 

This appeal was previously before the Board in January 2017 when it was remanded for addition development. As discussed below, the requested development was not substantially complied with and the claim is not ready for appellate review. See Stegall v. West, 11 Vet. App. 268 (1998). 

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.


REMAND

The Veteran's claim was most recently before the Board in January 2017 at which time it was remanded in order to obtain clarifying VA examinations and opinions. 

In response to the January 2017 Board remand the Veteran was provided with a March 2017 VA examination and opinion in connection with his claim for entitlement to service connection for a right knee disability. The examiner noted a diagnosis of right knee strain. The Veteran was noted to have a "subtle antalgic gait on the [left] knee." The examiner stated that the Veteran had a normal right knee aside from a right knee strain that was likely caused by his active lifestyle. The examiner concluded the Veteran's left knee disability did not cause his right knee disability. The examiner noted that while long term pronounced antalgic or abnormal gait may cause joint pain the Veteran did not present with a pronounced antalgic gait. The examiner concluded the Veteran's left knee disability did not aggravate his right knee disability because it did not preexist his active service and there was no evidence of aggravation. The examiner also concluded the Veteran's right knee was not etiologically related to his active service because there was no evidence in his service treatment records of a right knee condition and that he did not seek medical treatment for it until "decades" after his active service. 

The Board finds the March 2017 VA opinion to be inadequate. The examiner noted that a prolonged pronounced antalgic or abnormal gait due may cause joint pain but found that the Veteran did not have a pronounced antalgic gait. The March 2017 examination report noted the Veteran had a subtle antalgic gait; however, the examiner did not discuss this finding or its significance in his rationale. In addition, the disability benefits questionnaire prompted the examiner to provide an opinion for aggravation of a condition that existed prior to service. As the definition for aggravation of a preexisting disability (chronic worsening) is distinct from the definition of aggravation of a disability secondary to a service-connected disability (any increase in disability) the examiner used the incorrect standard for aggravation when providing his opinion. In addition, the examiner impermissibly based his conclusion that the Veteran's right knee disability was not etiologically related to his active service based on the absence of in-service treatment of a right knee disability. As such, an addendum opinion must be obtained on remand. 

In response to the January 2017 Board remand the Veteran was provided with a March 2017 VA examination in connection with his claim for an increased rating for his left knee disabilities. The examiner noted diagnoses of left knee degenerative arthritis. In the section in which the Veteran was to describe his flare-ups the examiner stated "see above" where a portion of the March 2016 VA examination was copied and pasted into the examination report. Range of motion findings were taken and the Veteran's left knee range of motion was noted to be abnormal. The examiner stated there was pain on passive range of motion testing and pain when the joint was used in non-weight bearing. 

The Board finds the March 2017 VA examination to be inadequate. The January 2017 Board remand specifically requested that the examiner provide range of motion findings in active motion, passive motion, weight-bearing, and nonweight-bearing when possible. While the examiner noted there was pain on passive range of motion testing and pain when the joint was used in non-weight bearing he did not provide range of motion findings as required by 38 C.F.R. § 4.59. In addition, a new VA examination was requested in order to ascertain the current severity of the Veteran's left knee disabilities. Instead of having the Veteran describe the current nature of his flare-ups the examiner copied the description of the Veteran's flare-ups from a VA examination from March 2016. This does not allow the rater to determine the current nature of the Veteran's flare-ups. As such, a new VA examination which adequately addresses the severity of the Veteran's left knee disabilities must be obtained on remand. 

In addition the January 2017 Board remand requested that the Veteran be provided with a separate VA examination for his surgical scars which described each of the Veteran's scars and where they originated from. The March 2017 VA examiner gave scar findings in the body of the Veteran's knee examination. The examiner noted the Veteran had an anteromedial scar of his left knee vertical, an anterosuperior medial scar left knee, medial knee scar from arthroscopy within the vertical scar, and superior lateral knee scar. The examiner noted there was an additional scar superior on the lateral knee above the arthroscopic scar but that the Veteran stated this scar was from a nonservice connected injury. 

The Board finds the March 2017 VA examination to be inadequate. The examiner did not indicate where each of the Veteran's scars originated from and in some instances did not specify which knee the scar was located. Moreover, the examiner stated the Veteran reported that one of his scars was from something that was not service connected; however, the examiner did not give his professional opinion as to the etiology of the scar. As such, a new VA examination must be obtained on remand. 

Moreover, clarification is still needed regarding how the Veteran's scars are rated. A November 2017 rating decision granted the Veteran an earlier effective date of February 8, 2013, for the Veteran's painful surgical scars. The Veteran's 10 percent rating for one or two scars which are unstable or painful was continued, however, the rating decision did not indicate what scars it was considering associated with the February 2013 surgery when providing the 10 percent evaluation. As such, clarification must be obtained regarding which scars are being evaluated before the Board can adjudicate the Veteran' earlier effective date. 

The Veteran's claims file contains a January 2017 memo stating that a CD labeled left knee arthroscopy February 8, 2013, was received but was "unscanable." Following that memo the Veteran's claims file contains what appear to be radiographic images of a knee. However, these photographs are not labeled in anyway as such it is not possible to determine their significance or if they are from the unscanable CD. Therefore, on remand clarification regarding the photographs must be obtained. 

In addition, the Veteran appears to continue to receive treatment at a VA medical center. As such, any and all outstanding treatment record smuts be obtained on remand and associated with the claims file. 

Accordingly, the case is REMANDED for the following action:

1. Attempt to obtain and associate with the claims file any and all outstanding VA treatment records. 

2. An attempt should be made to clarify the nature and originating source of the photographs in the Veteran's claims filed received January 27, 2017. 

3. Contact the VA examiner who examined the Veteran in March 2017 in connection with his claim for service-connection for a right knee disability. 

Based on the examination and review of the record, the examiner should offer an opinion as to the following:

(a) Diagnose any current right knee disability 

(b) As to each diagnosed right knee disability discuss whether it is at least as likely as not (50 percent or higher degree of probability) that it is etiologically related to the Veteran's active service?

(c) Is it at least as likely as not (50 percent or higher degree of probability) that any right knee disability was caused by either of his service-connected left knee disabilities (traumatic arthritis and arthritis with limited flexion)?

The examiner should consider and discuss as necessary the Veteran's lay statements indicating that his right knee disability is due to him favoring his right knee because of his left knee pain and the March 2017 VA examiners finding that the Veteran has a subtle antalgic gait. 

(d) Is it at least as likely as not that the Veteran's service-connected left knee disabilities aggravated any current right knee disability?

The examiner is informed that aggravation here is defined as any increase in disability. If aggravation is present, the clinician should indicate, to the extent possible, the approximate level of disability (baseline) before the onset of the aggravation.

A complete rationale must be provided for all opinions. If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made. 

If the March 2017 VA examiner is unavailable, another qualified examiner should be requested to provide the same opinions. If a new VA examination needs to be conducted in order to obtain the opinions, then one should be scheduled. All indicated tests and studies should be undertaken. 
 
4. After the completion of the foregoing schedule the Veteran for a VA examination to determine the current severity of his left knee traumatic arthritis and left knee arthritis with limited flexion. The examiner is requested to delineate all symptomology associated with, and the current severity of, the left knee traumatic arthritis and arthritis with limited flexion. The appropriate Disability Benefits Questionnaire (DBQs) should be filled out for this purpose if possible. 

The examiner should specifically test the Veteran's left knee range of motion in active motion, passive motion, weight-bearing, and nonweight-bearing. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary in this case, he or she should clearly explain why this is so. 

The examiner should specifically ask the Veteran to describe the factors that precipitate a flare-up and the frequency, duration, and severity of any flare-ups. The examiner should use that information to comment on the functional limitations caused by pain and any other associated symptoms. Such comments should include whether there was additional limitation of motion following repetitive testing due to pain, weakness, fatigability, etc. Any determination concerning this functional loss should be expressed in degrees of additional range of motion loss. A detailed rationale is requested for all opinions provided. 

If the examiner cannot provide an opinion without resort to speculation, the examiner should provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made, to include whether there are additional tests or information that might be sufficient to estimate such additional functional loss during flares.

5. Schedule the Veteran for a VA examination to determine the current severity of his left lower extremity painful surgical scars and surgical scars. The examiner is requested to delineate all symptomology associated with, and the current severity of, the left lower extremity painful surgical scars and surgical scars. The appropriate DBQs should be filled out for this purpose if possible. 

The examiner must specify the location of each scar and where they originated from. 

6. Review the Veteran's claim file and take the necessary steps to clarify which surgical scars are associated with the Veteran's February 2013 surgery and which are associated with his 1978 surgery. The RO should re-evaluate and re-assign an appropriate effective date if necessary. 

7. Thereafter, readjudicate the Veteran's claims. If any benefit sought on appeal is not granted, issue a supplemental statement of the case and provide the Veteran and his representative with an appropriate opportunity to respond. The case should then be returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




_________________________________________________
M.E. LARKIN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2017).